## D'HONDT vs. BONGARD.

*Sixth Judicial District Court, October,* 1857.

POSSESSION—EJECTMENT.

Actual possession of a portion of real estate, with color of title, will sustain ejectment
for the whole tract described in the colorable title.
A grant of the Governor of California is such a colorable title.

The facts are set forth in the opinion.

*Latham & Sunderland,* for plaintiff.

*Crocker & McKune,* for defendant.

BOTTS, J.—This is action of ejectment, brought to recover the possession of lot No. 2, in the square between R and S, Front and Second streets, in the city of Sacramento. A jury having been waived, the case was submitted to the court.

I have decided that the deposition of Vioget, taken in the suit of Brannan vs. Wiley, offered by the plaintiff is inadmissible, both because of the irrelevancy of the matter deposed to, and because it was evidence taken *in re inter alios acta.*

The case then rests upon the original petition of and grant to, John A. Sutter, the *mesne* conveyances from Sutter to the plaintiff, and the depositions of Sutter and Fowler, together with admissions made by counsel in open court, upon the day of trial.

I find, as matter of fact, that Exhibit $3\frac{1}{2}$, is a correct translation of the petition presented by Sutter to Juan B. Alvarado, Governor of California, on the 15th day of June, 1851. Exhibit No. 4, is a correct copy of the original grant to Sutter, made in compliance with said petition; that the map marked Exhibit $4\frac{1}{2}$, is a correct copy of the map accompanying the original petition, and referred to in the petition and grant; that the plaintiff exhibits a perfect deraignment of title from Sutter; that Sutter and his grantees, since 1841 have had an actual and unbroken possession of a portion of the land contained in the limits of his grant; that the lot in controversy is within the limits of said grant, and that the defendant is in possession of the premises in dispute.

Upon these facts I adjudge, as matter of law, that the plaintiff is entitled to a judgment for the possession of the premises described in the complaint, and his costs of suit.

This is a most important case, and one on which I have bestowed the most profound consideration. The doctrine that an actual possession of a part, with color of title, will sustain ejectment for the whole tract described in the colorable title, has been settled for me by the Supreme Court, in Gunn vs. Bates & McCartney, decided July term, 1856. Nay, more, that case relieves me from the embarassment of determining whether this incipient step towards the acquisition of title —the grant of the Governor of California—is color of title, since Sheldon's title, upon which the action in that case was maintained, is identical with Sutter's which is the foundation of this. So far, then, the way had been paved before me, and the road was easy enough.

But it is contended by the defendants, that the boundaries of the grant include neither the place known as "Sutter's Fort," of which it is admitted Sutter had actual possession, nor the land in controversy; and it must be admitted that the terms of the grant are vague and uncertain enough to leave some room for doubt. But after much consideration, I cannot but think that there is a decided preponderance of reason in favor of the interpretation that extends the grant to all the land delineated upon the map which accompanied the petition; or I would rather say, the right of selection of the eleven leagues vested in Sutter by the grant, embraced all the land delineated upon the map; and this right of selection as against others than the Government or its grantees, has been held equivalent to a grant.

It is true, that the grant in one, specifies as a southern boundary the line of latitude 58 degrees, 49 minutes and 32 seconds, and this line, it is admitted, is several miles north, both of Sutter's Fort and of the premises in controversy; but I am inclined to think that the boundaries specified in the third section of the grant are not intended as the boundaries of the grant, so much as a description of the main features and boundaries of the map according to which the grant is made.

It will be perceived from an interpretation of the third section, that the term "*sus linderos,*" its limits, marks or boundaries, may apply as well to "*el diseno,*" the map, as to "*el terreno,*" the land; indeed, of the two names, the former is nearer to the possessive pronoun whose

antecedent is the point in question.   Now let us look to the other por-
tions of the grant, and the surrounding circumstances, to assist us in
solving this doubt.

Sutter presents his petition, in which he solicits eleven leagues of
land, to be selected from the territory included in the map annexed to
his petition.   In reply, the Governor states that he has examined the
map: that it includes no land previously appropriated, and is, there-
fore, all subject to grant, and he concedes the prayer of the petition.
Upon confirmation by the Junta Department, he says that the proper
officers will proceed to segregate the eleven leagues, and put the peti-
tioner in possession.   The land intended to be granted, says he,
amounts to eleven square leagues, to be selected from that portion of
country included in the accompanying map, the limits or boundaries
of which are as follows, viz: " ' Los tres Picos,' and latitude 39 deg.,
41 min., 45 sec. on the north; the borders of Feather River on the
east; latitude 38 deg., 49 min., 32 sec. on the south, and the River
Sacramento on the west."   Now, upon an examination of the map, of
which we take this to be intended as a description, we find that its
prominently marked features are " Los tres Picos," and a line of lati-
tude in the upper part; the Feather River the most eastern object;
the Sacramento the most western, and a certain line of latitude the
most southern.

The line of latitude in the north, which, neither in the grant or on
the map purports to be the line of the Three Peaks, on the copy of
the map in evidence, is without the figures that probably appeared in
the original.   In the grant they are designated as 39 deg., 41 min.,
45 sec., and this, it is admitted, is about a correct designation of the
line appearing on the map.   In this connection it is to be observed
that this line on the map, stops short of the meridian of the " Three
Peaks," which lie considerably south of it, but which are the most
northern object designated on the map, west of the point where the
line of latitude terminates.   Hence, in a description of the map, the
northern limits are said to be the " Three Peaks," and the line of lat-
itude, 38 deg., 49 min., 32 sec.   As anything else than a description
of the map, this would be an absurdity.   How could a northern bound-
ary of a tract of land be a line of latitude and a point south of that
line ?   The fact that the line of latitude delineated on the map stops

at a point east of the Peaks, and the supposition that the grantor is describing the objects delineated in the northern part of the map, make this otherwise absurd expression, perfectly intelligible. Again, he says the Feather River lies on the east, the Sacramento on the west. This is the relative position of these rivers as they are represented on the map. The Feather river is the most eastern, the Sacramento river the most western, object delineated. As boundaries of the tract intended to be granted, this description would be impossible, because it is admitted on all hands, that the line of latitude intended as the southern boundary of the tract, lies south of the junction of these rivers. Thus, whilst these terms answer well enough as a rough description of a rude map, they are contradictory and impossible, if considered as designating the boundaries of the grant.

Up to this point, every consideration leads to the conclusion that the Governor intended to adopt the map as descriptive of the limits within which the eleven leagues were to be selected, and that in the third section of the grant, he merely attempts to describe the northern, eastern, and western features of the map. Now, how is it with the southern line? In the third section it is described as the line of latitude, 38 deg., 49 min., 32 sec. On looking at the map, we find at its southern extremity a line marked "lindero 38 deg., 41 min., 32 sec." The two sets of figures differ only by a single stroke of the pen. Out of six figures, five agree exactly. If the one is not an attempted copy of the other, this is a singular coincidence, to say the least of it. But again, Sutter, in his petition, states that with the leave of the government, he has already established himself in the territory for which he seeks a grant, and that he calls his establishment "New Helvetia." On the map we find the conventional figure of a fort, and the words "Establa de Nueva Helvetia," written under it. The line of latitude designated as the southern boundary in the third section of the grant, would exclude the fort or establishment of New Helvetia from the grant, whilst the line at the southern extremity of the map marked "lindero," would include it.

Now with all these facts before us, shall we determine that it was the intention of the grantor to fix, without any apparent reason, as the southern boundary of this grant, a line of latitude which would exclude the well known home of the petitioner—his fortified domicil—

the establishment on which he prides himself—making it the foundation of his claim to the favorable consideration of the government; or shall we adopt that construction which is so natural, so probable, and which gives him for his southern boundary, the line marked as *lindero* on the very map referred to, and adopted by the grantor? For my part, I cannot hesitate a moment in determining that the third section of the grant, is intended merely as a description of the outlines of the map, and the southern boundary is misdescribed by a single figure—an error which is corrected by a reference to the map itself, made a part of the grant.

It is for these reasons that I find, as a mixed question of law and fact, that the plaintiff's grantor was in possession of a part, with color of title to a tract of land in which the premises in controversy are included.

Let judgment be entered for the plaintiff.